UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL ACTION |
| VERSUS | |
| | NO. 3:16-CR-132-JWD-EWD |
| ADRIAN C. HAMMOND, JR. | |

**RULING AND ORDER**

This matter comes before the Court on the *Motion to Reconsider Sentence* (Doc. 105) filed by Defendant Adrian Hammond. The United States (the "Government") has filed an opposition to the motion, (Doc. 109), and a supplemental brief, (Doc. 119). No reply was filed, despite Defendant being given an opportunity to do so. (*See* Doc. 118.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is denied.

**I.      Relevant Factual and Procedural Background**

  **A.  Defendant's Original Crime and Sentence**

Defendant was charged by way of Superseding Indictment with, among other things, bank fraud in violation of 18 U.S.C. § 1344 (Count 1); money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count 6); and obstructing the due administration of the Internal Revenue Laws in violation of 26 U.S.C. § 7212(a) (Count 7). (Doc. 27.)

On August 23, 2017, Defendant pled guilty to Counts 1, 6, and 7 of the Superseding Indictment. (Doc. 36.) On August 23, 2018, the Defendant was sentenced to a total term of twelve (12) months plus one day as to all counts, to run concurrently. (Doc. 68 at 2.) Defendant was also

sentenced to a term of supervised release consisting of three (3) years on each of Counts 1 and 6 and one (1) year on Count 7, to run concurrently, for a total of three (3) years. (*Id.* at 3.)

On August 19, 2019, Defendant was released from the Bureau of Prisons and his term of supervised released commenced. (Doc. 77 at 1.) Conditions of the release were set by the Court. (Doc. 68 at 3–5.)

On August 18, 2020, the one-year term of supervised release on Count 7 expired. However, Defendant remained on supervised release for the other two counts.

### B. Defendant's Revocation

On March 24, 2021, an *Amended Petition for Warrant or Summons for Offender Under Supervision* ("*Amended Petition*") was filed into the record. (Doc. 77.) Defendant was charged with two Grade C violations. (*Id.*)

The first condition at issue provided, "If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours." (*Id.* at 2.) The nature of noncompliance was as follows:

> On March 6, 2021, Mr. Hammond was arrested by the Baton Rouge Police Department for DWI (2nd Offense), reckless driving, improper lane usage, driving under suspension, open container, and possession of marijuana. Details from the affidavit of probable cause indicate the sergeant observed Mr. Hammond's vehicle enter Interstate 10 from the right shoulder and quickly accelerate to well over 100 miles per hour in a 65 miles per hour zone. The vehicle's right turn signal was illuminated. The sergeant further observed the vehicle cross the inside lane divider and outside the fog line on several occasions, at which time he conducted a traffic stop. The report further states the that upon exiting North Acadian Thruway, Mr. Hammond's vehicle almost struck the middle median, which divides the left and right turn lanes. The report reflects that Mr. Hammond reported he did not have his driver's license on his person. The sergeant's report reflects Mr. Hammond had the unmistakable odor of an alcoholic beverage emanating from his person, glassy eyes, and an unsteady balance. Mr. Hammond submitted to a field sobriety test and performed poorly. He admitted

>to alcohol consumption, specifically consuming two shots of vodka. Upon securing Mr. Hammond's vehicle, the sergeant noted there was a clear plastic cup containing a suspected alcoholic beverage on the passenger floorboard, an opened 750 ml bottle of Ciraq Vodka that was almost empty, the edible gummy candy, and a box which read Kingpen 63.67% thc Cannabis Vape Cartridge. Mr. Hammond was brought to the police station, where he refused to submit to breath sample and refused to sign any paperwork without an attorney present. The sergeant obtained a warrant to draw Mr. Hammond's blood. Blood test results showed Mr. Hammond's blood alcohol level was 0.145 grams percent +/-0.009 grams percent.
>
>Mr. Hammond bonded out of the East Baton Rouge Parish Prison on March 6, 2021. He did not notify the probation office of his arrest within 72 hours. He reported the arrest on March 10, 2021.

(*Id.* at 2–3.)

The second special condition allegedly violated was, "You must submit to substance abuse testing to determine if you have used a prohibited substance. You must assist in the cost of the testing, as approved by the probation officer. You must not attempt to obstruct or tamper with the testing methods." (*Id.* at 3.) The nature of noncompliance was as follows:

>On March 16, 2021, Mr. Hammond called the code a phone system at 10:25 a.m. from his cellular telephone number. He was scheduled for a drug screen this date. Later that same day, a person reported to the vendor with Mr. Hammond's code a phone card, representing they were Mr. Hammond and wanted to take a drug screen. The vendor recognized immediately the person was not Mr. Hammond and was someone impersonating Mr. Hammond. The vendor asked the impersonator for another form of identification. The imposter said he did not have one on his person. The vendor told the impersonator that he knew he was not Mr. Hammond. The impersonator said he had an identification card in his truck and would retrieve it. The impersonator the left the building, entered a vehicle and left the premises. The vendor maintained control of Mr. Hammond's U.S. Probation Office issued code a phone card and contacted the probation office to advise of the situation. Mr. Hammond failed to report to the vendor on March 16, 2021, and submit to a screen.

3

> On March 19, 2021, Mr. Hammond called the code a phone system at 6:01 a.m. and at 9:59 a.m. It notified him to report for a scheduled drug screen that same date. He failed to report for a drug screen on March 19, 2021. This same date, the vendor observed Mr. Hammond's vehicle parked in a spot next to their building and then observed his vehicle leave. Moments later, the vendor observed Mr. Hammond's vehicle come back and park by the street. A few minutes Mr. Hammond's vehicle left and did not come back. He did not go into the vendor's building to submit a drug screen.

(*Id.*)

On July 15, 2021, the Court held a final revocation hearing. (Doc. 91.) Defendant admitted guilt to the first violation. (*Id.*) As to the second violation, Defendant denied guilt, and the Court heard testimony from three witnesses. (*Id.*) These witnesses included Defendant's probation officer, Lynn Guillot, who testified about Defendant's failure to comply with conditions of supervision, including drug testing, (Doc. 110 at 10–60); Brock Childers, the employee at Defendant's drug-screening facility AccuScreen Systems who witnessed Defendant try to use an impersonator for his drug test; and Roy Maughan, who spoke mainly about Defendant's financial opportunities, (*Id.* at 41–67).

After the testimony and evidence was presented, the Court found that Defendant violated the two conditions at issue. (Doc. 91.) The Court explained:

> So I find by a preponderance of the evidence that the allegations in the petition are sustained. With respect to the first violation, the defendant admitted that violation. With respect to the second violation, he did not admit it, but the testimony of Ms. Guillot and Mr. Childers I found to be credible, and the documentary evidence available to the Court convinces the Court that the second violation occurred, and therefore the allegations of the petition are sustained both for Violation 1 and Violation 2.

(Doc. 110 at 67–68.)

The Court then gave the guideline range based on a Grade C violation and Criminal History Category III as five (5) to eleven (11) months. (*Id.* at 68.) For oral reasons assigned, (Doc. 111 at

4

2–4), the Court sentenced Defendant pursuant to an upward departure to a total term of twenty-four (24) months as to Count 1 and twenty-four (24) months as to Count 6, to be served concurrently, with any term of imprisonment to run consecutively with any future term of imprisonment imposed pursuant to a judgment in Docket Number 21-CR-020898, Baton Rouge City Court, Baton Rouge, Louisiana. (Doc. 91.)

### C. Activity After the Revocation Hearing

On July 20, 2021, Defendant filed a notice of appeal. (Doc. 92.)  Two days later, judgment was entered. (Doc. 96.)

On July 26, 2021, a different counsel moved to enroll for Defendant, (Doc. 97), and that motion was granted the next day, (Doc. 100).  Defendant then filed a motion to stay appeal because:

> Newly retained counsel would like an opportunity to review the Court record to see what, if any, pleadings need to be filed in the district court. However, this court will be divested of any jurisdiction upon signing the Notice of Intent to Appeal which may prejudice counsel's efforts. As such, the defense requests the Court refrain for authorizing the Appeal until further motioned by the defense.

(Doc. 98 at 1.)  The Court denied the motion without prejudice and ordered Defendant to provide authority for the request and an estimate of how long Defendant needed. (Doc. 101.)

On July 29, 2021, Defendant filed a second motion to stay. (Doc. 102.)  New defense counsel represented that he developed impeaching evidence, obtained mitigating and/or exonerating evidence concerning the drug test, and "developed a proposed sentencing modification it would like the Court to consider upon counsel's anticipated filing of a Motion to Reconsider Sentencing/Revocation." (Doc. 102-2 at 2.)  Defendant was also awaiting a transcript of the revocation. (*Id.*)  Defendant cited to Federal Rule of Appellate Procedure 4(b)(4), which allowed the Court to extend the filing deadline for noticing an intent to appeal for "good cause" or

"excusable neglect." (*Id.*) Defendant requested a thirty-day extension. (*Id.*) On the next day, the Court granted the motion and stayed the notice of intent for thirty (30) days. (Doc. 103.)

On August 27, 2021, Defendant filed the instant motion for reconsideration. (Doc. 105.) The Government opposes the motion. (Doc. 109.) Thereafter, the case was assigned an appeal number in the Fifth Circuit, (Doc. 112), and the record on appeal was electronically certified on September 29, 2021. On the same day, a briefing notice was issued by the Office of the Clerk for the Fifth Circuit. *See United States v. Hammond*, No. 21-30433 (5th Cir. Sept. 31, 2021), Doc. 31. Defendant's brief is due November 8, 2021. (*Id.*)

In response, the Government filed a supplemental memorandum in opposition. (Doc. 117.) Defendant was given until October 7, 2021, to file a supplemental brief. (Doc. 118.) To date, Defendant has filed no such brief.

## II.  Discussion

### A.  Parties' Arguments

#### *1. Defendant's Original Memorandum (Doc. 105-2)*

Defendant seeks reconsideration of the Court's finding of a violation and of the sentence the Court imposed. Defendant concedes that, "[s]ince [] defendant admitted to the first [v]iolation . . .[,] little will be said of it in and of[] itself." (Doc. 105-2 at 2.)

As to the second violation, Defendant advances several arguments. First, Defendant emphasizes the fact that Defendant is presumed innocent. (*Id.*) Second, Defendant contends that the officer involved in the incident engaged in conduct that resulted in his being demoted and the dismissal of two federal cases. (*Id.*)

Third, Defendant argues that the two violations have interconnected evidence; Defendant did not have his driver's license when he was arrested for the DWI and thus, "[t]his fact lea[v]es

6

room for the real possibility that [Defendant] could only produce his testing credentials at AccuScreen when called to do so because he lost his dri[v]er's license." (*Id.* at 3.) This point is confirmed by a text exchange between Defendant and his former counsel in which he indicated that he lacked a license and that the facility was closed due to bad weather. (*Id.*) Mr. Childers, the AccuScreen employee that testified to the contrary, may have been in error. (*Id.*) In any event, Defendant did not fail any drug tests on supervision or pretrial release. (*Id.* at 4.) To the extent the upward variance was based on Defendant's alleged falsified drug screens, Defendant asks the Court to consider (1) "the history of [negative] drug tests" and (2) the newly presented evidence of Defendant advising his attorney of his "identification dilemma." (*Id.* at 4.)

Fourth, Defendant points to restitution as an issue impacting sentencing. (*Id.*) Defendant owes a considerable amount of money, and he is in a business (food and entertainment) that was severely hurt by COVID closures. (*Id.*) Defendant also presented testimony "of different opportunities that are in the works so to speak that would [improve Defendant's] financial condition and [give] him the opportunity to make a serious effort at repaying restitution were the Court to reconsider its sentence." (*Id.*)

And fifth, as to the sentence, Defendant notes that the Court has broad discretion in crafting a sentence. (*Id.* at 4–5.) Defendant asks the Court to impose a term of home confinement that would allow Defendant a chance to pursue his economic opportunities and make restitution. (*Id.* at 5.) Home confinement would also allow him a chance to undergo treatment for his alcoholism. (*Id.*) Alternatively, Defendant asks for a guideline sentence. (*Id.*)

### *2. Government's Opposition (Doc. 109) and Supplemental Brief (Doc. 119)*

The Government first contends that Defendant's motion is procedurally improper. (Doc. 109 at 3.) The Court's ability to alter a defendant's sentence is extremely narrow and circumscribed by statute and rule, and Courts generally do not recognize a motion for reconsideration in this situation. (*Id.* at 3–4.)

The Government next argues that Defendant's motion should be denied on the merits. (*Id.* at 5.) Defendant admitted to violating the first condition at issue, so there can be no error here. (*Id.*) As to the second violation, the Court "had the opportunity to consider the evidence, review the record, and assess the witnesses' demeanor and credibility, and the Court's resulting factual findings were correct." (*Id.* at 6 (citations omitted).) The Government then summaries the evidence in support of the Court's ruling and rebuts Defendant's position. (*Id.* at 6–8.)

As to the sentence itself, the Government asserts that "all of the factors [were] carefully weighed and considered by the Court" and that "the specific sentence that the Court imposed was reasonable, appropriate, and necessary." (*Id.* at 8.) The Court gave detailed reasons at the hearing and specifically considered whether a lesser sentence would be appropriate. (*Id.*) In any event, Defendant can argue that the sentence is unreasonable on direct appeal. (*Id.*)

In supplemental briefing, the Government maintains that the Court cannot grant Defendant the relief he seeks; because Defendant filed a notice of appeal, this Court was deprived of jurisdiction over all except for a narrow set of issues which do not apply here. (Doc. 119 at 2.)

### B. Law and Analysis

In short, the Court will deny Defendant's motion. The Court bases this decision on two grounds, both of which were highlighted by the Government.

First, the Court could not grant Defendant the relief he seeks, even if it were so inclined. "The general rule is that a case can exist only in one court at a time, and a notice of appeal permanently transfers the case to us until [the circuit court] send[s] it back[.]" *United States v. Lucero*, 755 F. App'x 384, 386 (5th Cir. 2018). "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Id.* (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam)). "[A]ctions taken by the district court in violation of this principle are null and void." *Id.* (quoting 16A Charles Alan Wright et al., *Federal Practice and Procedure* § 3949.1 (4th ed. 2018)).

"True, there are exceptions to the general one-court-at-a-time rule." *Id.* "For example, in a subsection titled 'Jurisdiction,' Appellate Rule 4(b)(5) carves out a single exception for Criminal Rule 35(a): 'The filing of a notice of appeal . . . does not divest a district court of jurisdiction to correct a sentence under Federal Rule of Criminal Procedure 35(a).'" *Id.* (quoting Fed. R. App. P. 4(b)(5)). "Similarly, Appellate Rule 4(b)(3) creates an exception for motions under Criminal Rules 29, 33, and 34." *Id.* (citing Fed. R. App. P. 4(b)(3)(A)–(B); *Stone v. Immigration & Naturalization Serv.*, 514 U.S. 386, 401–03 (1995)).

However, Defendant is not urging a motion under any of these rules. He is not seeking to "correct a sentence that resulted from arithmetical, technical, or other clear error" under Fed. R. Crim. P. 35(a), and, even if he were, relief under this rule would not be proper.[1] Nor is he pursuing a motion for judgment of acquittal because "the evidence [was] insufficient to sustain a

---

[1] As the Government argued, the Court's authority under this rule "is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action under Rule 35(a)." Fed. R. Crim. P. 35, notes of advisory committee on rules to 1991 amendment. "The subdivision is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence." *Id.*

9

conviction," Fed. R. Crim. P. 29(a), or a motion to arrest judgment for lack of jurisdiction, Fed. R. Crim. P. 34(a).

Further, even if Defendant's motion could be interpreted as one seeking a new trial based on newly discovered evidence (which is dubious), this Court could not grant the motion until the Fifth Circuit remands the case. *See* Fed. R. Crim. P. 33(b)(1) ("If an appeal is pending, the court may not grant a motion for a new trial [grounded on newly discovered evidence] until the appellate court remands the case."); *see also* 3 Sarah N. Welling, *Federal Practice and Procedure* § 583 (4th ed. 2021) (discussing Fed. R. Crim. P. 33(b)(1) & 37).

In sum, "Defendant is seeking a substantive modification to his sentence, and this Court lacks the jurisdiction to grant this relief because of Defendant's pending appeal." *United States v. Campbell*, -- F. Supp. 3d --- No. 6:06-CR-06105 EAW, 2020 WL 1958486, at *2 (W.D.N.Y. Apr. 21, 2020) (citing Fed. R. Crim. P. 37(a) ("If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.")). On this ground alone, the Court will deny Defendant's motion.

Second, even if the Court could grant the relief Defendant seeks, the Court would not be inclined to do so.  The Court was correct that both violations occurred. (*See* Tr. 67–68, Doc. 110.)

Again, Defendant admitted to the first violation, which is only his failure to timely report an arrest or interview with law enforcement to his probation officer. (*See* Doc. 77 at 2–3.)  The first violation is *not* most of the underlying egregious conduct set forth in the *Amended Petition*,

though Defendant did admit to some of this conduct as well.[2]  In any event, given Defendant's admissions, he cannot seriously dispute this violation.

The Court finds that the second violation occurred as well.  The Court previously concluded that this violation more likely than not occurred based on the documentary evidence and on the testimony of Defendant's probation officer and the AccuScreen employee. (Tr. 67–68, Doc. 110.) The Court still believes that these witnesses were highly credible, and Defendant's submissions do not justify a different result.  In short, the Court made no error here.

Finally, the Court will also deny the instant motion with respect to the sentence that it imposed.  The Court gave detailed reasons for the sentence, (Doc. 111 at 2–4), and nothing Defendant has brought forward with the instant motion has convinced the Court that it erred or that a new sentence is warranted.

In sum, the Court lacks the power to grant Defendant the relief he seeks.  Even if the Court could grant this relief, it would not do so.  For all these reasons, Defendant's motion will be denied.

### III.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Reconsider Sentence* (Doc. 105) filed by Defendant Adrian Hammond is **DENIED**.

Signed in Baton Rouge, Louisiana, on October 22, 2021.

**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[2] Defendant admitted to having "probably three" drinks on the night in question and that, "when [he] did have a drink, [he] was not able to hold [his] alcohol." (Doc. 110 at 73–74.)